**Stanley H. MAAS, Appellant,**

v.

**Kenneth W. TYLER et a'l., etc., Appellees.**

Court of Appeals of Kentucky.

June 13, 1958.

Rehearing Denied Oct. 17, 1958.

Blakey Helm, Louisville, for appellant.

William L. Sullivan, Henderson, for appellees.

CAMMACK, Judge.

This action was instituted by the appellees, Kenneth W. Tyler and other named stockholders of Plastic Tool and Engineering Corporation, individually and as stockholders, for and on behalf of the corporation, against the appellant, Stanley H. Maas, individually and as chairman of the board of directors of Plastic Tool, and against certain other named members of the board of directors, individually and in their official capacity. Plastic Tool and Engineering Corporation and Funeral Directors Manufacturing and Supply Company were named as defendants also.

The appellees sought to recover (1) $25,700 alleged to be due and owing Plastic Tool from stock sales made by the appellant and (2) $88,837.46 alleged to be due and owing Plastic Tool under a contract with Funeral Directors Manufacturing and Supply Company. They sought also to have the board of directors of Plastic Tool

restrained from taking any of certain named actions in their official capacities. The trial court granted the injunctive relief sought and awarded the appellees $50,000 against Funeral Directors and $23,700 against the appellant. A new board of directors for Plastic Tool had been elected prior to the entry of the judgment. Funeral Directors' motion for a new trial was sustained. Consequently, this appeal is from only that part of the judgment which ordered the appellant to pay $23,700.

The appellant contends that the judgment against him should be reversed because (1) the appellees had no right to maintain the action and (2) the trial court erred in reforming a $37,200 note executed by him to Plastic Tool and giving a personal judgment thereon.

The background of this controversy began to take form early in 1954 and while the appellant was attempting to develop a plastic grave vault. In furtherance of this undertaking he had promoted the Funeral Directors Company. Maas, the appellant, borrowed money from various personal friends and invested it in Funeral Directors stock. Later he learned that Plastic Tool could do the research and engineering necessary for the development of a plastic grave vault. He then purchased a majority of the voting stock ($30,000) in Plastic Tool and became chairman of its board of directors. Thereafter Funeral Directors contracted with Plastic Tool in regard to development of the plastic vaults.

In mid-1954 a number of shares of stock were issued by Plastic Tool and given to the appellant for sale. About that time friends who had loaned Maas money became interested in acquiring stock in either Funeral Directors or Plastic Tool. Funeral Directors stock was not then obtainable because the Securities and Exchange Commission had not authorized a new issue. The appellant exchanged Plastic Tool stock to his creditors for the cancellation of his personal debts. According to the narrative record, Maas acted with the full knowledge

of some of the other directors of Plastic Tool or at their suggestion because they said they felt sound business practices required retention by Maas of his Funeral Directors stock in order to facilitate the plastic vault enterprise. In any event, when the situation came to the attention of the full board it was suggested that the appellant's indebtedness to Plastic Tool for the stock issued be put in the form of a note for $37,200 and that he pledge his stock ($30,000) in that corporation and 100 shares of his Funeral Directors stock ($10,000) as full security. The $37,200 note when executed listed that stock as "full security and sole recourse." The note was not due when this action was filed (March 1956), but both Plastic Tool and Funeral Directors had become insolvent.

The appellant argues that the appellees had no right to maintain this action because they made no effort to secure action by the corporation before it was filed. KRS 271.065 requires that the petition in a shareholder's derivative suit shall set forth with particularity such an effort or the reasons for not making it. In the instant case the complaint alleged:

"Defendant Chairman and Members of the Board of Directors have been requested to bring this action but fail and refuse to do so. Under the circumstances, it would be a useless thing to further request said defendants to bring this action."

The proof, however, failed to disclose a formal demand for legal action.

The circumstances surrounding the transactions which were alleged to breach the fiduciary responsibilities of the directors were set out with particularity in the complaint. Those circumstances indicated that it would have been useless to request action by the directors. Where it appears that a demand for action would be unavailing, or, if granted, litigation would be in unfriendly hands, such a demand is not a condition precedent to the

right of stockholders to sue on behalf of a corporation. Harris v. Tri-Union Oil & Gas Co., 283 Ky. 241, 140 S.W.2d 1056. We believe the appellees sufficiently alleged and proved, as shown above, their right to maintain this action.

The appellant argues that the court had no authority to enforce the note because it was not due when the action was filed. It is argued further that the security given was adequate when the note was made, and that the court erred in giving a personal judgment against him when the note showed that collateral was "the sole recourse."

The appellees argue that the board had no power to take any note from the appellant to cover his defalcation as that would constitute an attempt to ratify a fraudulent and void transaction. They argue that the complaint demanded a money judgment and the fact that the trial court was of the opinion that the board of directors had the right to accept the note and that the note remained due and unpaid would not warrant disturbance of the judgment because it gave the same relief as was requested.

We believe the appellees' argument to be well grounded. The appellant cancelled his personal debts with Plastic Tool stock given him for sale. Granting the appellant's belief that he was, at the time, acting in the interest of the corporation, nevertheless the result was that the corporation received no cash when cash was needed. The appellant's acts were performed without first receiving the approval of the full board and the fact that some of the members may have approved of or suggested some of his acts would not alone justify them. It must not be overlooked that when the appellant was the owner of a majority of the voting stock he was in position to exercise a controlling influence. Even had the full board approved the transaction, we must bear in mind that directors must act in the utmost good faith, and also

that when the proximate result of their neglect is a loss to the corporation they are liable to the corporation. Kirchdorfer v. Liberty Nat. Bank & Trust Co., 303 Ky. 446, 197 S.W.2d 608.

The net result of the transactions complained of was that Plastic Tool lost on a deal wherein the appellant stood to gain if the stock soared in value, and could not lose if it became worthless. The closer scrutiny required when we examine the conduct of directors in corporate affairs leads us to conclude that the appellant, the controlling stock owner, served his own interests at the expense of Plastic Tool. Under the circumstances the board acted without authority in accepting the appellant's note and the appellees were entitled to a personal judgment against the appellant for $23,700, the amount of his $37,200 note less credits.

Judgment affirmed.