Davinder SAHNI, Appellant,

v.

Janett HOCK, in both her individual capacity and in her capacity as a Shareholder Derivative Representative of Emergency Medical Systems, Inc., Appellee.

Janett Hock, individually and on behalf of Emergency Medical Systems, Inc., and Tri–Star Holding, Ltd., Cross–Appellant,

v.

Davinder Sahni; Michael O'Leary; Emergency Medical Systems, Inc.; and Tri–Star Holding, Ltd., Cross–Appellees.

Nos. 2007–CA–001785–MR, 2007–CA–002421–MR.

Court of Appeals of Kentucky.

April 23, 2010.

Discretionary Review Granted by Supreme Court April 13, 2011.

Order Granting Discretionary Review Vacated and Discretionary Review Denied Nov. 11, 2011.

Craig C. Dilger and Jeffrey A. Calabrese (argued), Louisville, KY, for appellant/cross-appellee.

Bruce A. Brightwell (argued), New Albany, IN, for appellee/cross-appellant.

Before COMBS, Chief Judge;
NICKELL and TAYLOR, Judges.

## OPINION

NICKELL, Judge.

Davinder Sahni, appeals from a jury verdict in favor of Janett Hock, individually and on behalf of Emergency Medical Systems, Inc. (EMS), on her direct and shareholder's derivative claims for breach of fiduciary duty. Sahni argues: (1) Hock failed to satisfy the demand requirement of KRS [1] 271B.7–400(2); (2) Hock does not fairly and adequately represent the interests of EMS shareholders; (3) Hock lacks standing to pursue her direct claims for breach of fiduciary duty; and (4) Hock

---

1.  Kentucky Revised Statute.

presented no evidence supporting pre-judgment interest. We affirm in part, reverse in part, and remand.

On cross-appeal, Hock appeals from an order granting attorney fees to Sahni, O'Leary, EMS and TSH pursuant to KRS 271B.7–400(4). Hock argues: (1) attorney fees were only available on the derivative claims and not on the direct claims; (2) her prevailing derivative claim is a complete bar to the recovery of attorney fees; (3) attorney fees were not available because her suit would survive CR [2] 11 scrutiny; and (4) KRS 271B.7–400(4) is unconstitutional. We reverse and remand the award of attorney fees.

## BACKGROUND

EMS is a private, closely-held Kentucky corporation founded in 1982. Not traded on any stock exchange, EMS provided physician services nationally to hospital emergency departments, but as of 2006 was only servicing residual business matters. EMS shareholders included Sahni (40%), Michael O'Leary (40%), Hock (approximately 10–15%), and Robert Brice (approximately 5%). O'Leary, a Florida resident, served as corporate president and as a director. Sahni, a resident of Jefferson County, Kentucky, served as corporate vice-president, secretary, treasurer, and as a director.

Tri–Star Holding, Ltd. (TSH), is a separate, though related, Bermuda corporation, with its principal place of business in Jefferson County, Kentucky. Sahni was a majority shareholder of TSH, and Hock a minority shareholder. Tri–Star Investments, Ltd. (TSInv), is a Kentucky corporation, wholly-owned by TSH. Tri–Star Insurance Services, Ltd. (TSIns), a Kentucky corporation, and Paradigm Insurance Company (Paradigm), an Indiana corporation, with its principal place of business in

Jefferson County, Kentucky, are both wholly-owned subsidiaries of TSInv.

On February 2, 2001, Hock, via counsel, forwarded a letter to Sahni objecting to two notices of shareholder meetings. Hock objected to any shareholder meeting concerning EMS being conducted on February 5, 2001, based on her assertion that the notice for that meeting was defective and demanded it be re-noticed under the correct corporate name. Hock further objected to any annual meeting for TSH, as noticed for the same date, based on her assertion that she had been provided no annual financial statements concerning TSH as required by a liquidated trust agreement executed upon TSH's prior dissolution. Finally, Hock objected to both meetings being held in Arizona, particularly because EMS's principal office was located in Kentucky and previous meetings concerning both companies had been held in Kentucky. If the meetings proceeded as noticed in Arizona, Hock demanded that arrangements be made for her to participate telephonically. She further asked that her objection be made part of the minutes of both meetings.

On May 16, 2001, Hock, via counsel, forwarded a letter to EMS and TSH, pursuant to KRS 271B.7–400, demanding copies of numerous documents relating to the corporate operations and business dealings of EMS and TSH. Hock's letter also demanded certain investigations and explanations of several transactions involving Sahni or his trust. These transactions included Sahni's dealings relative to: his purchase of real estate located at 9000 Wessex Place (Wessex) from Paradigm for an amount she claimed to be less than its fair market value; his authorization of a loan from EMS to Jesse Medina, Inc. (Medina), a Texas corporation, which was

---

2. Kentucky Rules of Civil Procedure.

subsequently unpaid and written off by EMS as a loss; and his authorization for the sale of certain TSH subsidiary corporations to Queensway Financial Holdings, Ltd. (Queensway). Notably, Hock's demand letter did not reference any loan between Sahni, or EMS, and Dave Sahni & Associates, Inc. (DSA), a corporation controlled by Sahni.

On June 15, 2001, EMS and TSH, via counsel, responded to Hock's demand. First, because TSH was not a Kentucky corporation, the response stated TSH had no duty under KRS 271B.7–400 to provide the information or actions requested of it, and that none would be forthcoming. Second, asserting that KRS 271B.7–400 contained no mechanism or procedure by which a shareholder might request information or action, the response stated EMS would not provide the demanded information or take the demanded action.

On September 17, 2001, Hock filed a shareholder derivative action against Sahni, O'Leary, EMS, and TSH, in the Jefferson Circuit Court asserting claims individually and on behalf of EMS. In count one of her verified complaint, Hock alleged that as a minority shareholder she had sent EMS a demand, pursuant to KRS 271B.7–400, on May 16, 2001, for an investigation, accounting and information regarding EMS and its actions. Hock asserted EMS refused her demand on June 15, 2001; that she was entitled to the requested investigation, accounting and information; and that EMS was obligated to provide the same and should be ordered to do so.

In count two, Hock alleged Sahni and O'Leary breached their fiduciary duty to EMS and its shareholders by authorizing significant loans to themselves and others while failing to make any shareholder distributions. In particular, Hock referenced a $125,000.00 loan on November 25, 1997,

authorized by Sahni and O'Leary from EMS to Medina, that was unpaid and written off as a bad debt. Hock alleged Sahni and O'Leary were obligated to EMS for any improper loans if their actions were found to represent a breach of their fiduciary duty owed to EMS and its shareholders. As a result of the foregoing, Hock sought judgment in favor of EMS against Sahni and O'Leary for actual and punitive damages.

In count three, Hock alleged Sahni breached his fiduciary duty as trustee for a liquidating trust established upon the dissolution of TSH. Hock asserted Sahni had been the majority shareholder of TSH; that she had owned approximately six percent (6%) of the TSH stock; and that she was named as a beneficiary of the liquidating trust. Hock further alleged her letter of February 2, 2001, had demanded, pursuant to her rights under the liquidating trust agreement, information regarding TSH dealings, but TSH had refused to provide the information in its response of June 15, 2001. In particular, Hock referenced her demand for financial information relating to a separate lawsuit involving TSH as a plaintiff. Hock asserted she had objected to a February 5, 2001, TSH shareholders' meeting because she was without the demanded financial information; and she received no minutes from said meeting, even though it was apparently held despite her objection. As a result, Hock sought an order requiring TSH to produce the demanded financial information.

In count four, Hock alleged Sahni breached his fiduciary duty to TSH and its shareholders, including herself, as a result of his December 30, 1997, purchase of Wessex from Paradigm for the price of $3,100,000.00, which she claimed was less than its fair market value, and his subsequent lease of Wessex to the company

which bought Paradigm. Based on the foregoing, Hock sought actual and punitive damages against Sahni on behalf of TSH and its shareholders, including herself.

Finally, in count five, Hock alleged Sahni breached his fiduciary duty to TSH and its shareholders as a result of his actions relating to the 1997 sale by TSH of certain subsidiary or related companies, including TSInv, TSIns, and Paradigm, to Queensway, and his purchase of Wessex from TSH and his subsequent leasing of the property to Queensway. Hock asserted the foregoing sale had resulted in litigation, while no distributions had been made to TSH shareholders, including herself. As a result, Hock sought damages from Sahni on behalf of TSH, and/or its fiduciary trust, including shareholders and beneficiaries, including herself, for actual damages.

On April 5, 2004, Hock, via counsel, forwarded a settlement demand offering to settle "all claims against all the defendants." Hock's settlement demand stated that in return for "[p]ayment to her" of $250,000.00 from EMS, which she alleged represented approximately ten percent (10%) of the $2.4 million it had made since she left, she would settle all claims relative to EMS. Hock's settlement demand further stated that in return for the additional "[p]ayment to her" of $250,000.00, she offered to settle all claims against Sahni, TSH, and Paradigm, particularly including any claim arising from the sale of Wessex to Sahni.

On December 15, 2006, Sahni and the other defendants filed a motion for summary judgment, arguing Hock had failed to satisfy her statutory derivative demand requirement, did not fairly and adequately represent the interests of other EMS shareholders, and lacked standing to bring direct breach of fiduciary duty claims in a personal capacity. Though the trial court granted the motion in part, it denied summary judgment as to Hock's two claims alleging Sahni breached his fiduciary duty to EMS and Hock by authorizing improper loans by EMS to himself and Medina.

A week-long trial by jury was commenced on May 22, 2007. At the close of Hock's case, Sahni and the remaining defendants moved for a directed verdict on the remaining claims, incorporating and reasserting the same legal arguments raised in their motion for summary judgment. The trial court denied the motion. At the close of evidence, Sahni and the remaining defendant, O'Leary, renewed their motions for a directed verdict. The trial court again denied the motion.

On May 31, 2007, the jury returned a divided verdict as to Sahni, finding he had not breached any fiduciary duty through his handling of the loan from EMS to Medina, but that he had breached his fiduciary duty to Hock and EMS through his handling of the loan from EMS to Dave Sahni & Associates (DSA). As a result of Sahni's breach, the jury awarded Hock $118,000.00 and EMS $58,300.00 as actual, compensatory damages.

On June 15, 2007, Sahni timely moved the trial court for entry of judgment notwithstanding the verdict (JNOV) as to Hock's and EMS's claim involving Sahni's approval of a loan from EMS to DSA. By reference, Sahni incorporated arguments previously raised relative to his motion for summary judgment. First, Sahni argued Hock had never made a shareholder demand on EMS regarding any improper loans, as required by statute, and had failed to plead why the demand had not been made. As a result, Sahni argued Hock's derivative shareholder claim on behalf of EMS was legally insufficient and should never have been presented to a jury. Second, Sahni argued Hock's pursuit of personal "direct" fiduciary duty

claims while simultaneously pursuing representative "derivative" fiduciary duty claims in the same action created a conflict of interest disqualifying Hock from presenting the derivative claims to the jury. Third, Sahni argued that under Kentucky law there is no duty owed directly by a corporate officer or director to an individual shareholder based on injuries to the corporation, and Hock's "direct" shareholder claim should have never reached the jury. Fourth and finally, Sahni argued in the alternative that the trial court should reduce the jury's award of damages by $58,300.00, the amount of interest Hock and EMS asserted had accrued on the loan from EMS to DSA since its inception. In support, Sahni argued no proof had been tendered regarding the correct rate or amount of interest.

On August 13, 2007, the trial court entered a final and appealable order denying Sahni's motions. Subsequently, O'Leary, EMS and TSH filed for attorney fees under KRS 271B.7–400(4). Over Hock's objection, the trial court granted the motion on November 2, 2007, and directed Hock to pay $160,894.24 in attorney fees to the prevailing defendants. This appeal and cross-appeal followed.

### CASE NO. 2007–CA–001785–MR

■ Sahni first argues that Hock failed to satisfy the demand requirement of KRS 271B.7–400(2), because she alleged claims in her verified complaint that were not included in her demand letter. KRS 271B.7–400(2) states:

A complaint in a proceeding brought in the right of a corporation shall be verified and allege with particularity the demand made, if any, to obtain action by the board of directors and either that the demand was refused or ignored or why he did not make the demand. Whether or not a demand for action was made, if the corporation commences an investigation of the charges made in the demand or complaint, the court may stay any proceeding until the investigation is completed.

A complaining shareholder must first make demand upon the directors to obtain the desired action or plead with particularity why the demand was excused. *Allied Ready Mix Co. v. Allen,* 994 S.W.2d 4, 8 (Ky.App.1998). In *Allied,* this Court held the rule enunciated in the Delaware case, *Spiegel v. Buntrock,* 571 A.2d 767 (Del. 1990), applies to claims where the complaining shareholder made sufficient demand. *Id.* The rule in *Zapata Corp. v. Maldonado,* 430 A.2d 779 (Del.1981), applies to situations where no demand was made for futility or other reasons. *Allied* at 9. Claims for which demand was made and those for which no demand was made may coexist in the same case and are simply analyzed under separate legal standards. *Id.*

■ While "demand" is not defined in KRS 271B.1–400, it is clear from caselaw that the term "demand" means a demand for the board of directors to commence legal action. *Allied* at 8. "Where it appears that a demand for action would be unavailing, or, if granted, litigation would be in unfriendly hands, such a demand is not a condition precedent to the right of stockholders to sue on behalf of a corporation." *Maas v. Tyler,* 316 S.W.2d 211, 213–14 (Ky.1958). In *Maas,* the complaining stockholder alleged in his complaint that "[d]efendant, Chairman and Members of the Board of Directors have been requested to bring this action but fail and refuse to do so. Under the circumstances, it would be a useless thing to further request said defendants to bring this action." *Id.*

■ Other jurisdictions follow the view that "to cause the corporation to pursue

litigation, a shareholder must either (1) make a pre-suit demand by presenting the allegations to the corporation's directors, **requesting that they bring suit,** and showing that they wrongfully refused to do so, or (2) plead facts showing that demand upon the board would have been futile. Where, as here, a plaintiff does not make a pre-suit demand on the board of directors, the complaint must plead with particularity facts showing that a demand on the board would have been futile." *In re Citigroup Inc. Shareholder Derivative Litigation,* 964 A.2d 106, 120 (Del.Ch.2009) (emphasis added) (footnote omitted).

■ In the present case, we conclude that Hock failed to make a sufficient demand for action as contemplated by KRS 271B.7–400(2). The demand letter dated May 16, 2001, simply requested production of certain information and demanded an investigation into her particular allegations. Hock at no time demanded the commencement of legal action.

■ Notwithstanding the failure of a formal demand, such failure may be excused for futility under *Allied* and *Maas.* Hock stated in her complaint that she demanded EMS to conduct an investigation of her allegations and it refused to do so. Hock then stated that Sahni and O'Leary collectively control 80% of EMS stock. While Hock did not expressly use the word "futile," the futility of her demand was apparent as O'Leary was the president of EMS and Sahni was vice-president, secretary, treasurer, and director of EMS. We conclude under the present circumstances that the demand requirement of KRS 271B.7–400(2) was excused for futility.

■ Sahni next argues that Hock's derivative claims should have been dismissed because she does not fairly and adequately represent the interests of EMS shareholders as required by KRS 271B.7–400(1). KRS 271B.7–400(1) states:

A person shall not commence a proceeding in the right of a domestic or foreign corporation unless he was a shareholder of the corporation when the transaction complained of occurred or unless he became a shareholder through transfer by operation of law from one who was a shareholder at that time. The derivative proceeding shall not be maintained if it appears that the person commencing the proceeding does not fairly and adequately represent the interests of the shareholders in enforcing the right of the corporation.

The issue of whether a plaintiff fairly and adequately represents the interests of the shareholders is committed to the discretion of the trial court. *Owen v. Modern Diversified Industries, Inc.,* 643 F.2d 441, 443 (6th Cir.1981). The defendant bears the burden of proof to demonstrate that the plaintiff cannot fairly and adequately represent the interests of the shareholders. *Id.*

Sahni points to a settlement offer where Hock offered to settle her claims for payment made to her individually. We agree with the trial court that such an offer is evidence to be weighed in determining whether a plaintiff adequately represents the interests of the shareholders. We are not cited to nor did we discover any Kentucky authority declaring such a settlement offer would *per se* disqualify a shareholder from instituting a derivative action. Here, there are only four shareholders in EMS, two of which control 80% of the stock and are named defendants in this action. The only other shareholder owns approximately 5% of EMS stock, has not participated in this proceeding, and has apparently been uninvolved in the events affecting EMS. Hock was the only shareholder available to pursue claims on behalf

of the other shareholders. Thus, the trial court did not abuse its discretion by concluding that Hock fairly and adequately represented the interests of the shareholders.

■ Sahni next argues that Hock lacked standing to pursue direct claims because her only alleged injury was a decrease in the value of her stock and was, therefore, derivative of the corporation's claims. Hock counters that such direct claims are permitted by KRS 271B.8–300.

■ The general rule is that "[a] shareholder's rights are merely derivative unless he can show violation of a duty owed directly to him. Depreciation in value of shareholder's corporate stock is generally not the type of direct personal injury necessary to sustain a direct cause of action." *NBD Bank v. Fulner*, 109 F.3d 299, 301 (6th Cir.1997). KRS 271B.8–300 provides in pertinent part:

> (5) In addition to any other limitation on a director's liability for monetary damages contained in any provision of the corporation's articles of incorporation adopted in accordance with subsection (2)(d) of KRS 271B.2–020, any action taken as a director, or any failure to take any action as a director, shall not be the basis for monetary damages or injunctive relief unless:
>
>> (a) The director has breached or failed to perform the duties of the director's office in compliance with this section; and
>>
>> (b) In the case of an action for monetary damages, the breach or failure to perform constitutes willful misconduct or wanton or reckless disregard for the best interests of the corporation and its shareholders.
>
> (6) A person bringing an action for monetary damages under this section shall have the burden of proving by clear and convincing evidence the provisions of subsection (5)(a) and (b) of this section, and the burden of proving that the breach or failure to perform was the legal cause of damages suffered by the corporation.

Hock couched her complaint against Sahni as a breach of fiduciary duty. She made no reference to KRS 271B.8–300 nor did she allege Sahni committed willful misconduct or that he acted with wanton or reckless disregard for the best interests of the corporation or its shareholders. Moreover, the only damages alleged with any specificity were "the value of its business and assets depreciated and its funds misappropriated and misused" and "for any damages she has incurred as a result of his breach of fiduciary duty."

We conclude that Hock failed to demonstrate a specific injury to herself outside the diminution in value of EMS stock and that she did not sufficiently allege a cause of action under KRS 271B.8–300. Therefore, we reverse the judgment in favor of Hock individually and remand this matter to the trial court with instructions to dismiss Hock's direct action claim. Our holding has no impact on the judgment in favor of EMS against Sahni. As we have reversed on the direct action claim, Sahni's final and alternative argument on direct appeal, in which he requested a reduction in the amount awarded by the jury, is moot.

## CROSS–APPEAL CASE NO. 2007–CA–002421–MR

■ In an order entered November 15, 2007, the trial court awarded the defendants attorney fees in the amount of $160,894.24 for defending Hock's claims which the trial court found to have been commenced without a reasonable basis. The trial court found all of Hock's claims

were inextricably intertwined and did not apportion the fees.

KRS 271B.7–400(4) states in part:

[o]n termination of the proceeding the court may require the plaintiff to pay any defendant's reasonable expenses, including counsel fees, incurred in defending the proceeding if it finds that the proceeding was commenced without reasonable cause.

Hock correctly asserts that KRS 271B.7–400(4) applies only to shareholder derivative suits. However, Kentucky caselaw directs:

[g]enerally, attorney fees must be apportioned between claims for which there is statutory authority for an award of attorney fees and those for which there is not. But where all of plaintiff's claims arise from the same nucleus of operative facts and each claim was "inextricably interwoven" with the other claims, apportionment of fees is unnecessary.

*Young v. Vista Homes, Inc.*, 243 S.W.3d 352, 368 (Ky.App.2007).

In the present case, the trial court found all of Hock's claims arose from the same nucleus of operative facts and the claims were inextricably intertwined. Hock does not challenge this finding, but rather asserts that the plain language of KRS 271B.7–400(4) requires apportionment. Based on our holding in *Young*, we disagree.

■■■ Hock next argues that the defendants' recovery of attorney fees from her is prohibited by KRS 271B.7–400(4) because she prevailed on her derivative claim and direct action against Sahni. We agree.

■■■ Our task is to interpret statutes using the literal, plain meaning of their words, unless doing so "would lead to an absurd or wholly unreasonable conclusion." *Bailey v. Reeves*, 662 S.W.2d 832, 834 (Ky.

1984). Furthermore, this Court's "main objective is to construe the statute in accordance with its plain language and in order to effectuate the legislative intent." *Cabinet for Families and Children v. Cummings*, 163 S.W.3d 425, 430 (Ky.2005) (citing *Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky.2002)).

KRS 271B.1–400(20) defines "proceeding" as ". . . civil suit and criminal, administrative, and investigatory action[.]" Suit is defined as:

A generic term of comprehensive signification, and applies to any proceeding by one person or persons against another or others in a court of justice in which the plaintiff pursues, in such court, the remedy which the law affords him for the redress of an injury or the enforcement of a right, whether at law or in equity.

*Black's Law Dictionary* 1603 (revised 4th ed. 1968).

We have not been cited to nor have we located any Kentucky authority on this issue. Nor do we find any instructive foreign authority. However, based on the foregoing definition of "proceeding" *vis-à-vis* that of "suit," we conclude that the plain language of KRS 271B.7–400(4) limits the discretion of the trial court to award defendants attorney fees only when the entire proceeding in its entirety was commenced without reasonable cause. KRS 271B.7–400(4) does not expressly address the award of attorney fees for individual claims commenced without reasonable cause. Even so, our conclusion does not provide plaintiffs free rein to pursue frivolous claims alongside colorable claims in derivative proceedings because CR 11 sanctions remain available as a deterrent.

Here, three of Hock's claims went to the jury and two of them were successful, even though our holding now requires their dis-

missal on procedural grounds. Three other claims by Hock were dismissed by summary judgment, while the rest of her claims were disposed of by directed verdict. Thus, Hock's proceeding was not wholly without merit, and we therefore reverse the trial court's award of attorney fees pursuant to KRS 271B.7–400(4), and remand this matter for proceedings consistent with this opinion.

Finally, Hock argues that KRS 271B.7–400(4) is unconstitutional. The trial court did not address this claim. Our Supreme Court has stated:

> It is fundamental that a party who asserts a claim must prove that claim to the satisfaction of the trier of fact, and on failure of the fact-finder to rule on the contention, the pleading party must seek a ruling from the trial court by means of a request for additional findings of fact.
>
> In particular, CR 52.04 requires a motion for additional findings of fact when the trial court has failed to make findings on essential issues. Failure to bring such an omission to the attention of the trial court by means of a written request will be fatal to an appeal. *Cherry v. Cherry*, Ky., 634 S.W.2d 423 (1982). The thread which runs through CR 52 is that a trial court must render findings of fact based on the evidence, but no claim will be heard on appeal unless the trial court has made or been requested to make unambiguous findings on all essential issues.

*Vinson v. Sorrell*, 136 S.W.3d 465, 471 (Ky.2004). Hock did not request any additional rulings on the constitutional issue. Therefore, we decline to address it.

## CONCLUSION

Therefore, for the foregoing reasons, the August 13, 2007, judgment of the Jefferson Circuit Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Further, the November 15, 2007, judgment is reversed and remanded for further proceedings.

COMBS, Chief Judge, concurs.

TAYLOR, Judge, concurs in part, dissents in part, and files separate opinion.

TAYLOR, Judge, concurring in part and dissenting in part.

I concur with the majority in the reversal of the trial court's order of November 15, 2007, awarding Sahni attorney fees in this case. Given that Hock prevailed upon at least one of the alternative theories plead in this case, Sahni is not entitled to an award of any attorney fees incurred, in my opinion.

I also concur with majority in affirming the judgment in favor of EMS against Sahni.

As concerns the reversal of the trial court's judgment in favor of Hock made final by order entered August 10, 2007, I respectfully dissent. The majority concludes that the allegations set forth in the complaint that Sahni breached fiduciary duties to the shareholders and corporation did not constitute an allegation of willful misconduct required by KRS 271B.8–300 to assert an actionable claim against Sahni. I disagree.

In Kentucky it is black letter law that the breach of a fiduciary duty is equivalent to fraud. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991). Kentucky courts have also concluded that fraud and intentional misrepresentation have the same meaning under the common law. *Morton v. Bank of the Bluegrass & Trust*, 18 S.W.3d 353 (Ky.App. 1999). In *Commonwealth v. Smith*, 242

Ky. 365, 46 S.W.2d 474 (1923), the Court observed that fraud is:

> [A] generic term which embraces all the multifarious means which human ingenuity can devise and are resorted to by one individual to get an advantage over another. No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling and unfair ways by which another is cheated.

*Id.* at 478 (citations omitted). BLACK'S LAW DICTIONARY 1593 (7th ed. 1999), defines willful as "[v]oluntary and intentional, but not necessarily malicious." Clearly the fraud or breach of fiduciary duty by Sahni constituted intentional or willful acts that caused damage to Hock and EMS.

Accordingly, I believe that the allegations of breach of fiduciary duty in the complaint are sufficient to allege the willful "intentional" misconduct of Sahni under KRS 271B.8–300 and otherwise support the jury verdict and judgment in this case. Given that EMS was a closely held corporation, the damages sustained by Hock and EMS were both foreseeable and sufficiently specific to support the jury verdict and judgment in this case. Semantics in pleading cannot be allowed to defeat an otherwise sufficiently pled and proven claim allowed under KRS 271B.8–300. *Cf. Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226 (6th Cir.1991).

Therefore, I would affirm the trial court's judgment in favor of Hock in its entirety.