Sam GROSS, Appellant

v.

ADCOMM, INC. and Christopher L. Pearson, Appellees

NO. 2014–CA–001031–MR

Court of Appeals of Kentucky.

RENDERED: DECEMBER 11, 2015; 10:00 A.M.

Brief for Appellant: William J. Walsh, Louisville, Kentucky.

Joint Brief for Appellees, Adcomm, Inc., and Chris Pearson: J. Gregory Joyner, Louisville, Kentucky.

BEFORE: CLAYTON, KRAMER, AND STUMBO, JUDGES.

*OPINION*

KRAMER, JUDGE:

Sam Gross appeals a judgment of the Fayette Circuit Court which found him civilly liable to Appellee, Adcomm, Inc., in the amount of $169,672.35, and which dismissed various civil claims Gross asserted against Chris Pearson. For the reasons stated below, we affirm in part and vacate in part.

By way of background, on or about April 26, 2001, Sam Gross and Christopher Pearson incorporated Adcomm, Inc. As stated in Adcomm's articles of incorporation, Adcomm issued a total of 1000 shares (500 to Gross and 500 to Pearson); Adcomm's board of directors consisted of only Gross and Pearson; and Gross was Adcomm's registered agent. At the inaugural meeting of Adcomm's board of directors the following day, Gross and Pearson also voted and passed a resolution that Gross would be Adcomm's President and that Pearson would be Adcomm's Vice President.

On or about March 20, 2004, Pearson submitted documentation to the Kentucky Secretary of State representing that he had become the president and new registered agent of Adcomm. On August 11, 2005, Adcomm, in its individual capacity and at the direction and upon the authority of Pearson as its "director and vice-president," then filed a complaint in Fayette Circuit Court against Gross. Adcomm's complaint asserted Gross was civilly liable to it for converting corporate assets and breaching various fiduciary duties. Included in Adcomm's prayer for relief was a demand for an accounting of Gross's use of Adcomm's assets; requests for compensatory and punitive damages; and a request for an order removing Gross "from all

offices and positions of any type with Adcomm." [1]

In response, Gross moved to dismiss Adcomm's complaint for lack of standing. Specifically, Gross pointed out that no resolution from the board of directors had appointed Pearson as the president of Adcomm; authorized Adcomm to engage in litigation that was effectively against half of the directors on its own board; or authorized Adcomm to hire an attorney to prosecute its suit. Gross would later reassert this argument, or variations of it, in several other motions to dismiss Adcomm's suit or to disqualify Adcomm's counsel from prosecuting its suit over the course of the next several years of litigation that would follow. Nevertheless, on the only occasion that the circuit court made a ruling upon one of Gross's motions to this effect, the circuit court denied it without further explanation.[2]

Gross's motions were not granted by the circuit court. Therefore, Gross counterclaimed asserting that if Adcomm was entitled to file its suit against him, he was entitled to sue for, or offset from Adcomm's recovery, certain profits he alleged Adcomm had wrongfully withheld from him and the amount of several loans he had allegedly made to Adcomm which had gone unpaid. Gross also filed a third-party complaint against Pearson. In substance, Gross alleged that Pearson had usurped business opportunities from Adcomm; had overcharged Adcomm for rent; and had wrongfully converted Adcomm's assets. Gross claimed Pearson's alleged conduct "constitute[d] a violation of Pearson's fiduciary duties as a stockholder and officer of Adcomm, Inc. and also constitute[d] conversion of funds from Adcomm, Inc., and thus conversion from Sam Gross." [3] Notably, Gross filed his complaint in his individual capacity, not on behalf of Adcomm.[4]

█ Eventually, the circuit court entered an order on August 9, 2011, referring this matter to a master commissioner for the following purpose:

> for an accounting of the assets and liabilities of the administratively dissolved company, Adcomm Inc.,[5] including a

1. There is no indication from the record that Gross's interest in Adcomm was or has ever been negated, or that Gross was ever removed from his positions as Adcomm's president and as one of its two directors.

2. The motion which the circuit court ruled upon was filed by Gross on November 7, 2007. There, Gross moved to disqualify Adcomm's counsel, Jeffrey Stamper, arguing that Adcomm's counsel "has no corporate authority to represent the corporation," and that his "current representation is directly adverse to his obligations to the shareholders (Sam Gross) of the corporation he purports to represent." Gross also moved the circuit court to require Adcomm to account for all of the corporate funds it had used and was continuing to use to pay the fees of its attorney in this matter.

 In substance, Gross's motion was not merely a challenge to Adcomm's selection of counsel, but a challenge to its ability to entertain any aspect of its suit against Gross. Indeed, Adcomm acknowledged this point in its response to Gross's motion; there, it argued in relevant part: "Gross's argument, if successful, would mean that no attorney could represent Adcomm because any representation would necessarily require agreement by both owners, Pearson and Gross."

3. The above quote appears in paragraph "12" of Gross's third-party complaint against Pearson. It exemplifies the theory underpinning the breadth of Gross's claims against Pearson.

4. Gross's complaint also requested a judicial dissolution of Adcomm, but Gross was later required to transfer that particular claim to Jefferson Circuit Court where it was eventually denied. *See Gross v. Adcomm, Inc.*, No. 2009–CA–001734–MR, 2010 WL 4295697 (Ky. App. Oct. 29, 2010).

5. As recited in the circuit court's August 9, 2011 order, Adcomm ceased operations, its

determination of the normal and ordinary pre-tax earnings of the entity, and the balance of loans between Adcomm, Inc. and the Defendant/Third–Party Plaintiff Sam Gross and the Third–Party Defendant Christopher L. Pearson.

In July of 2012, a master commissioner took evidence over the course of a two-day hearing regarding the issues outlined in the circuit court's order. The master commissioner subsequently entered a recommended order making the following conclusions:

1. This accounting matter is properly before the Court and this Commissioner.

2. Adcomm owes Gross $138,250.00 for monies loaned by Gross to Adcomm.

3. Gross owes Adcomm $121,034.60 for monies Gross caused to be taken from the Adcomm bank account.

4. Gross owes Adcomm $63,870.00 for monies Gross caused to be expended from Adcomm's account for things which did not benefit Adcomm.

5. Gross owes Adcomm $123,017.75 for monies paid or payable to Adcomm which Gross misappropriated and caused to be deposited into his own personal bank account.

6. The net of those amounts appears that Gross owes Adcomm $169,672.35, for which those amounts the Plaintiff should have judgment, interest and costs.

On May 13, 2014, the circuit court entered an order adopting and rendering judgment in conformity with the master commissioner's findings in favor of Adcomm and Pearson. This appeal followed.

On appeal, Gross offers no argument that the circuit court's order was erroneous inasmuch as it dismissed his third-party claims against Pearson. Thus, to that extent, the circuit court's order must be affirmed. *See, e.g., Osborne v. Payne,* 31 S.W.3d 911, 916 (Ky.2000) ("Any part of a judgment appealed from that is not briefed is affirmed as being confessed."). Instead, Gross primarily offers the following two arguments:[6] (1) Adcomm lacked standing to file suit against him so this litigation should have been dismissed at its inception; and (2) Adcomm's counsel, Jeffrey Stamper, has had a irreconcilable conflict of interest from the inception of this twelve-year-long litigation and should have been disqualified.

We will chiefly address the first of these two points because it is dispositive.

 We begin by clarifying that the claims in this matter, for the most part, were claims to enforce rights that properly belonged to Adcomm, the corporate entity styled as the "plaintiff" below. That much is obvious with respect to the claims Adcomm purported to assert against Gross,

---

corporate charter was revoked, and it was administratively dissolved sometime earlier that year. This and the facts that Adcomm apparently never enacted any bylaws and never held any other elections for directors subsequent to its incorporation were points cited by the circuit court and master commissioner.

It is unclear why the circuit court and master commissioner found these points significant enough to note them in their respective orders. We note, however, that administrative dissolution does not terminate the existence of an entity, preclude it from winding up or liquidating its business and affairs, or terminate the authority of its registered agent. KRS 14A.7–020(3) and (4). The absence of by-laws would not invalidate a corporation's existence. Furthermore, a failure to hold elections does not divest incumbent directors of their powers. *See* KRS 271B.8–050(5).

6. Because we agree with and therefore vacate the circuit court's judgment based upon Adcomm's lack of standing, it is unnecessary to address the third of Gross's arguments, *i.e.,* that the master commissioner's findings, as adopted by the circuit court, were clearly erroneous.

but this holds equally true for the claims Gross directly asserted against Pearson for Pearson's alleged breach of fiduciary duties and conversion of Adcomm's assets. This is because corporate assets are the property of the corporation, not the shareholders. *See Owens v. C.I.R.*, 568 F.2d 1233, 1238 (6th Cir.1977). Officers and directors owe fiduciary duties to the corporation, not the shareholders.[7] Thus, if corporate assets are misappropriated, or if a corporate officer or director otherwise breaches a fiduciary duty, it is an injury to the corporation, not a shareholder. *See 2815 Grand Realty Corp. v. Goose Creek Energy, Inc.*, 656 F.Supp.2d 707, 716 (E.D.Ky.2009).

■ Ordinarily, a corporation enforces its own rights and files its own litigation. *See* KRS 271B.3–020(1)(a) (providing that unless its articles of incorporation provide otherwise, every corporation has the right to "[s]ue and be sued, complain and defend in its corporate name."). Whether a corporation decides to do so, however, is subject to the *majority* vote of its board of directors. *Kentucky Bar Ass'n v. Hines*, 399 S.W.3d 750, 769 (Ky.2013); *see also* KRS 271B.8–240. Accordingly, the question presented in this matter is as follows: Who is entitled to assert and litigate the rights of an aggrieved corporation when, as here, the party who allegedly injured the corporation is a 50% shareholder, controls half of the corporation's board of directors, and does not want the corporation to pursue litigation?

For its part, Adcomm asserts that it was capable of filing suit on its own behalf because Pearson, by himself, properly authorized it to file its direct litigation

against Gross. Relying upon KRS 271B.8–310(4), Adcomm argues:

> [S]ince the subject of Adcomm's claims against Sam Gross as set out in the Verified Complaint created an obvious conflict of interest for Gross, Gross's permission was not necessary before suit against him was properly filed by the Company. Chris Pearson's fifty percent interest in the Company constituted a quorum of the non-conflicted votes necessary to elect to take action against Gross for his fiduciary breach and conversion of assets from the Company.

Stated differently, Adcomm appears to believe that a director who is accused of damaging his corporation in some way cannot vote against authorizing his own corporation to sue him for it. Thus, Adcomm reasons that because Gross was accused of damaging Adcomm, and because Pearson—its only other director—assented to Adcomm directly suing Gross, Adcomm had the necessary authority to directly sue Gross.

However, KRS 271B.8–310, which concerns director conflicts of interest, provides no support for Adcomm's argument. It states in pertinent part:

> (1) A conflict of interest transaction shall be a transaction with the corporation in which a director of the corporation has a direct or indirect interest. A conflict of interest transaction shall not be *voidable by the corporation* solely because of the director's interest in the transaction if any one (1) of the following is true:
>
> > (a) The material facts of the transaction and the director's interest were disclosed or known to the board of

---

7. *See* 18B Am.Jur.2d Corporations § 1462 (2011); *see also* KRS 271B.8–300(6) and KRS 271B.8–420(6) (requiring a person bringing an action for monetary damages under either section to prove the director's or officer's "breach or failure to perform was the legal cause of *damages suffered by the corporation.*" (Emphasis added)).

directors or a committee of the board of directors and the board of directors or committee authorized, approved, or ratified the transaction;

(b) The material facts of the transaction and the director's interest were disclosed or known to the shareholders entitled to vote and they authorized, approved, or ratified the transaction; or

(c) The transaction was fair to the corporation.

. . .

(4) For purposes of subsection (1)(b) of this section, a conflict of interest transaction shall be considered authorized, approved, or ratified if it receives the vote of a majority of the shares entitled to be counted under this subsection. Shares owned by or voted under the control of a director who has a direct or indirect interest in the transaction, and shares owned by or voted under the control of an entity described in subsection (2)(a) of this section, may not be counted in a vote of shareholders to determine whether to authorize, approve, or ratify a conflict of interest transaction under subsection (1)(b) of this section. The vote of those shares, however, shall be counted in determining whether the transaction is approved under other sections of this chapter. A majority of the shares that are entitled to be counted in a vote on the transaction under this subsection shall constitute a quorum for the purpose of taking action under this section.

(Emphasis added.)

As emphasized, KRS 271B.8–310 merely delineates transactions that are *voidable by the corporation*—that is, transactions that a corporation has a *right* to void if it so chooses. *See* BLACK'S LAW DICTIONARY

1568 (7th ed. 1999) (defining "voidable" as "capable of being affirmed or rejected at the option of one of the parties"). Nothing in KRS 271B.8–310 requires a corporation to directly exercise that right. Nothing in KRS 271B.8–310 alters the manner in which a corporation decides to exercise and vindicate such a right (*i.e.*, through a majority vote of its directors at a meeting of its board).[8] Likewise, nothing in KRS 271B.8–310 disqualifies any director—self-interested or otherwise—from voting against the corporation exercising such a right.

Nevertheless, Adcomm offers a second argument in favor of the proposition that it had standing to directly sue Gross in its own right. This argument is in pertinent part as follows:

> The recent case of *Sahni v. Hock*, 369 S.W.3d 39 (Ky.App.2010), supports *Pearson's* position regarding the appellant's Motion to Dismiss [for lack of standing to sue]. *Sahni* requires a shareholder, such as Pearson, to first make demand upon the Company directors to take the desired action before *enabling the shareholder to sue in the name of the Company*. In this case, Adcomm was a corporation with two equal shareholders, one of which had an obvious conflict of interest. Stamper's letter to Gross of December 4, 2002 (Record, Vol. 2, pp. 243–244) and later to his counsel August 12, 2005 (Record, Vol. 2, pp. 245–246) assuredly met the demand requirement.
>
> Moreover, *Sahni* specifically holds that: Where a demand for action would be unavailing or, if granted, would be in unfriendly hands, such a demand is not a condition precedent to the right of stockholders to sue on behalf of a corporation. *Sahni*, at 45, citing

---

**8.** *See generally* KRS 271B.8–240.

*Maas v. Tyler,* 316 S.W.2d 211, 213–214 (Ky.1958); and *Allied Ready Mix Co. v. Allen,* 994 S.W.2d 4, 8 (Ky.App. 1998).

Considering the actions of Gross in this case, a more detailed demand asking Gross to vote to permit Adcomm to sue him would be a classic *exercise in futility* which is not required to be practiced under Kentucky corporate law.

. . .

*Gross's acts are textbook examples of conduct that prove he breached duties he owed to the Company and thus permitted Adcomm (and Pearson) to seek redress against him.*

The statutory scheme provides that a corporation has the ability to pursue claims in its own name against directors and officers on behalf of a shareholder under KRS 271B.8–300 (concerning conduct of corporate directors); KRS 271B.8–310 (concerning conflicts of interest); and KRS 271B.8–420 (concerning conduct of corporate officers). If certain standards are breached and violated, a cause of action exists. *Pearson fully complied with any and all prerequisites necessary before filing suit* as evidence by the Verified Complaint he filed and by the letters to Gross or his counsel of November 22, 2002 (Record Vol. 2, pp. 243–244); August 12, 2005 (Record Vol. 2, pp. 245–246); and December 29, 2005 (Record Vol. 2, pp. 247–248). All of these documents spell out in some great detail the egregious actions Sam Gross was undertaking to avoid his *fiduciary obligations to Adcomm in general and his need to repay money owed to the company,* specifically.

(Emphasis added.)

█ However, the most noticeable flaw of Adcomm's argument is that it misunderstands the posture of this case. To explain, the case of *Sahni v. Hock,* 369 S.W.3d 39 (Ky.App.2010), prominently cited by Adcomm, addressed the rules of standing relative to "derivative proceedings." Simply put, a derivative proceeding is an action brought by a *shareholder* "in the right of a corporation"—not by a corporation itself—to recover corporate losses or to protect the corporation's interests on behalf of a corporation. *See Hines,* 399 S.W.3d 750, 769 (citing KRS 271B.7–400(2)). Stated differently, it is a statutory remedy available to disappointed shareholders when a corporation's board of directors ignores or wrongfully refuses to enforce the corporation's right to redress a corporate injury and has effectively blocked the corporation from taking any direct action. *See generally* KRS 271B.7–400.

Derivative actions are also initiated by shareholders in circumstances where it would be futile to even ask the board to cause the corporation to enforce its rights. This is often the case when, by asking the board to cause the corporation to enforce its rights, a shareholder would be effectively asking a majority of the board of directors to cause the corporation to *sue themselves.* See, e.g., *Cumberland Pub. Co. v. Adams Real Estate Corp.,* 432 S.W.2d 808, 814 (Ky.1968) (derivative suit was minority shareholder's remedy for enforcing corporation's right to recoup majority shareholder's debts to company); *Harris v. Tri–Union Oil & Gas Co.,* 283 Ky. 241, 140 S.W.2d 1056, 1057 (1940) (same); *see also People's State Bank v. Jacksonian Hotel Co.,* 261 Ky. 166, 87 S.W.2d 111, 114 (1935), explaining:

Where the control of the wronged corporation is in the hands of persons who have obtained stock directly from it without giving value or who have paid only an insufficient consideration, or whose interests are antagonistic to the company, and therefore will not insti-

tute, or allow to be instituted, proceedings in the name of the corporation to redress the wrong and cause a surrender of the stock issued without consideration, a stockholder may institute and maintain such an action for and on behalf of the corporation.

█ With this in mind, *Sahni* and its interpretation of the rule regarding the "futility" of making a demand for suit upon a board of directors have no bearing upon whether Adcomm had standing to sue Gross. This is because the "futility" rule applies to derivative actions, not direct actions. And, despite Adcomm's insinuation that "Pearson" had a "position regarding [Gross's] Motion to Dismiss," *Pearson* did not file a derivative action against Gross on behalf of Adcomm. Rather, Adcomm purported to file a direct claim on behalf of itself, and Pearson (as reflected in his several depositions, his testimony before the master commissioner, and in Adcomm's multitude of pleadings in this matter) repeatedly stated that he was acting at all times as Adcomm's authorized representative in causing Adcomm to file the instant litigation.[9] Further underscoring this point are the facts that (1) "Adcomm, Inc."

has always been the sole individual plaintiff suing Gross during the twelve years of this litigation; and (2) Adcomm hired its own attorney to prosecute its case against Gross and to defend this appeal. Consequently, this argument also does not support that Adcomm had standing to directly sue Gross. Instead, as italicized above, it demonstrates that Adcomm does not appreciate the difference between a direct corporate action and a derivative corporate action.

█ With that said, we return to the dispositive question presented in this case: Who is entitled to assert and litigate the rights of an aggrieved corporation when, as here, the party who allegedly injured the corporation is a 50% shareholder, controls half of the corporation's board of directors, and does not want the corporation to pursue litigation?

Because a corporation can only decide to file suit if a majority of its board is in favor of doing so and because 50% is not a majority, several of our sister jurisdictions have observed that a shareholder could initiate a derivative proceeding in this situation.[10] Alternatively, if the situation

---

9. As indicated, the extent of Pearson's involvement as a party to this litigation was limited to his participation as a defendant regarding Gross's third-party claims.

10. *See, e.g., COR Marketing & Sales, Inc. v. Greyhawk Corp.*, 994 F.Supp. 437, (W.D.N.Y. 1998) (New York law does not allow one of two 50% shareholders to file suit on behalf of the corporation against the second shareholder); *Stone v. Frederick*, 245 A.D.2d 742, 666 N.Y.S.2d 294, 295 (N.Y.App.Div.1997) ("[W]here there are only two shareholders each with a 50% share, an action cannot be maintained in the name of the corporation by one stockholder against another with an equal interest and degree of control over corporate affairs; the proper remedy is a stockholder's derivative action."); *Anmaco, Inc. v. Bohlken*, 13 Cal.App.4th 891, 16 Cal.Rptr.2d 675, 679 (Cal.Ct.App.1993) ("[N]o presumptive or im-

plied authority in the president to institute litigation in the name of the corporation against a co-director and equal shareholder. Pressing the corporation into litigation as a plaintiff is inappropriate where the other shareholder-director could claim equal authority to bring suit in the corporate name."); *L.W. Kent & Co. v. Wolf*, 143 A.D.2d 813, 533 N.Y.S.2d 119 (N.Y.App.Div.1988) (explaining that a 50% shareholder must file a derivative suit), *Tidy–House Paper Corp. v. Adlman*, 4 A.D.2d 619, 168 N.Y.S.2d 448 (N.Y.App.Div. 1957) (holding that a president does not have the implied authority to file suit in this situation); *Borkowski MBI v. Fraternal Order of Police*, 155 F.R.D. 105, 110 (E.D.Pa.1994) (finding shareholder's "efforts to press the corporation into litigation as a plaintiff is inappropriate where the other shareholder-director could claim equal authority to bring suit in the corporate name" and adding that

presents a ground for judicially dissolving the corporation, a court could appoint a receiver capable of enforcing the corporation's rights without interference from any of the directors. *See generally* KRS 271B.14–320.

As discussed, however, this action purported to be a direct corporate action. There is no resolution of Adcomm's board of directors that authorized Adcomm to file the instant litigation against Gross, or to hire and pay any attorney to prosecute it. In light of Gross's twelve years of objections to this litigation; his 50% interest in Adcomm; and his role as the second of Adcomm's two directors, it is also obvious that no such resolution would have ever been forthcoming. Absent such a resolution, Adcomm lacked authorization to file this litigation, was never properly a party to it, and its claims should have been dismissed as a matter of law. *See, e.g., Covington Housing Corp. v. City of Covington,* 381 F.Supp. 427 (E.D.Ky.1974). Indeed, if a 50% owner of a corporation (such as Pearson) could authorize a corporation to file suit and defend an appeal, then by parity of reasoning the other 50% owner (such as Gross) could just as easily compel the same corporation to either dismiss the suit in question or confess error on appeal.

█ As such, whether Adcomm's counsel should have been disqualified (*i.e.,* the second of the two primary arguments raised by Gross on appeal) is a moot point because Adcomm's lack of standing warrants dismissing its suit against Gross as opposed to merely remanding it for fur-

ther proceedings. Without addressing this point on the merits we would add, however, that the Kentucky Supreme Court has held that an attorney had an inherent conflict of interest and violated his duty of loyalty to his client corporation where he sided with less than a majority of a corporation's board of directors; presumed less than a majority of the corporation's board of directors constituted the lawful controller of the company; and filed suit directly on behalf of the company alleging that various of the company's officers and directors had acted improperly.[11] *Hines,* 399 S.W.3d at 769.

Equally moot is the matter of whether the circuit court erred in dismissing Gross's counterclaims against Adcomm. Gross's claims sought an offset against any amounts he might have owed Adcomm; because Adcomm's complaint against him must be dismissed, and Adcomm cannot have any recovery in this matter, there is nothing to set-off.

In light of the foregoing, the Fayette Circuit Court is AFFIRMED to the extent that it dismissed Gross's third-party claims against Pearson. In all other respects, we VACATE and the circuit court is directed to dismiss Adcomm's complaint.

ALL CONCUR.

---

"[t]he proper vehicle for a suit, when the gravamen of the complaint is injury to the corporation, and the shareholders are deadlocked, is a shareholder's derivative action." (Citation omitted.))

11. Stamper did not author the joint appellee brief submitted on behalf of both Adcomm and Pearson. Nevertheless, according to the appellate docket Stamper continues to serve as Adcomm's counsel in this matter.