The plaintiffs have not plausibly alleged that they sustained any injury as *740 shareholders of the Tarter Corporations that is not indirect or incidental to the Tarter Corporations' expenditure of costs and loss of cost savings. As a result, they lack standing to bring an individual capacity action to redress those injuries. However, the plaintiffs assert that they nonetheless have standing to sue Joshua Tarter in their individual capacities because they are members of the Tarter LLCs, Joshua Tarter is manager of the Tarter LLCs, and "members of an LLC may bring an action both derivatively and in their individual capacities against company managers." [Record No. 1, ¶¶ 1-3, 19; Record No. 14, p. 11] In support, they cite Griffin v. Jones , 170 F.Supp.3d 956 (W.D. Ky. 2016), and Patmon v. Hobbs , 280 S.W.3d 589 (Ky. App. 2009).
Griffin and Patmon establish that, under Kentucky law, a managing member of a limited liability company ("LLC") owes fiduciary duties both to the LLC and to its individual members. Griffin , 170 F.Supp.3d at 965 ; Patmon , 280 S.W.3d at 595. However, these cases do not address whether individual LLC members have standing to sue a managing member when their only alleged injuries are derivative of injuries sustained by the LLC.
The courts that have considered that question have concluded that LLC members, like corporate shareholders, lack standing to sue in their individual capacities when they have not suffered any injury that is separate and distinct from the injury to the LLC or its other members. Pixler v. Huff , 3: 11-cv-207, 2012 WL 3109492 (W.D. Ky. July 31, 2012) ("Kentucky courts are likely to apply the [direct injury rule] to claims made in the LLC context. Therefore, Plaintiff may maintain her claims against the Defendants only where she has suffered an injury that is separate and distinct from that which would be suffered by other members or the LLC as an entity."); see also Wells Fargo Fin. Leasing v. Griffin , 5: 13-cv-75, 2014 WL 241778, *7 (W.D. Ky. Jan. 22, 2014) (finding that when an LLC member's injury is merely derivative of an injury to the LLC, the LLC is the "real party in interest" under Federal Rule of Civil Procedure 17, and the LLC member lacks standing to bring an individual capacity action).See also KRS § 275.337(1) ("A member may maintain a direct action against a limited liability company, another member, or a manager to redress an injury sustained by, or to enforce a duty owed to, the member if the member can prevail without showing an injury or breach of duty to the company. ") (emphasis added). The Court agrees with its sister court in the Western District of Kentucky this rule should apply to both corporate shareholders and LLC members.
The plaintiffs have not plausibly alleged that they sustained any injury as members of the Tarter LLCs that is not indirect or incidental to the Tarter LLCs' expenditure of costs and loss of cost savings. As a result, they lack standing to bring an individual capacity action to redress those injuries. Accordingly, the plaintiffs lack standing to maintain an individual capacity action either as shareholders of the Tarter Corporations or as members of the Tarter LLCs, and their individual capacity claims will be dismissed.
IV.
The plaintiffs also purport to bring this action in their derivative capacities on behalf of the Tarter Companies. Federal Rule of Civil Procedure 23.1 provides for heightened pleading standards when a shareholder or member seeks to bring such an action on a company's behalf. As relevant here, the plaintiff must "state with particularity" any effort made to prod the entity into bringing the action on its own behalf, and any reason the plaintiff *741 failed to make such an effort or the effort was unsuccessful. Fed. R. Civ. P. 23.1(b)(3). Kentucky law similarly provides that a shareholder or member seeking to bring a derivative action must plead with particularity that they made a demand on the company to bring the action on its own behalf, or that making such a demand would be futile. KRS 271B.7-400 (for corporations); KRS 275.337(2) (for LLCs). Kentucky law governs the demand and futility requirements to bring a derivative action on behalf of a Kentucky company. See McCall v. Scott , 239 F.3d 808, 815 (6th Cir. 2001) (citing Kamen v. Kemper Fin. Servs. Inc. , 500 U.S. 90, 96-97, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).
The term "demand" means a "demand to commence legal action." See Sahni , 369 S.W.3d at 45 (construing KRS 271B.7-400) ; KRS 275.337(2) (providing that the demand must request that the relevant decision-makers "cause the company to bring an action to redress the injury or enforce the right"). A demand for the production of certain information or an investigation into the plaintiff's allegations, unaccompanied by a demand to commence legal action, is insufficient to satisfy this requirement. Sahni , 369 S.W.3d at 46. Here, the plaintiffs allege that they demanded that Joshua Tarter fully disclose his relationship with QMC and return all profits of QMC to the Tarter Companies on multiple occasions, and did so in the presence of the other owners of the Tarter Companies on at least one occasion. [Record No. 1, ¶¶ 46-47, 97, 116-17] But because these requests were not demands to commence legal action, they fail to satisfy the pre-suit demand requirement under Kentucky law.
However, the plaintiffs may nonetheless bring a derivative action if they allege with particularity that making such a demand would have been futile. Sahni , 369 S.W.3d at 46.[7] The Complaint alleges that "[d]ue to ownership percentages" the owners of the Tarter Companies are deadlocked regarding QMC issues, and making a demand for the Tarter Companies to commence legal action would be futile.[8] [Record No. 1, ¶¶ 117-18] The defendants contend that this allegation insufficiently pleads that making a demand would be futile. [Record No. 8, p. 8-10; Record No. 10, p. 10-15]
The demand futility exception provides that "[w]here it appears that a demand for action would be unavailing or, if granted, would be in unfriendly hands, such a demand is not a condition precedent to the right of stockholders to sue on behalf of a corporation." Sahni , 369 S.W.3d at 45 (quoting Maas v. Tyler , 316 S.W.2d 211, 213-14 (Ky. 1958) ). Kentucky courts have looked to Delaware case law when *742 determining the contours of the demand futility exception. Id. at 45-46 ; Allied Ready Mix Co. ex rel. Mattingly v. Allen , 994 S.W.2d 4, 8 (Ky. App. 1998) ("Delaware cases are the leading cases in this subject area and have been followed by other courts. This Court finds them persuasive in the case at bar.").
Delaware law provides that where, as here, the plaintiffs do not challenge any conscious decision of a corporation's board of directors, "the court must determine 'whether or not the particularized factual allegations ... create a reasonable doubt that, as of the time the complaint is filed, a majority of the board of directors could have properly exercised [their] independent and disinterested business judgment in responding to a demand." McCall v. Scott , 239 F.3d 808, 816 (6th Cir. 2001) (quoting Rales v. Blasband , 634 A.2d 927, 932 (Del. 1993) ) (alterations added and omitted). "This is often the case when, by asking the board to cause the corporation to enforce its rights, a shareholder would be effectively asking a majority of the board of directors to cause the corporation to sue themselves. " Gross v. Adcomm, Inc. , 478 S.W.3d 396, 402 (Ky. App. 2015) (emphasis in original).
Kentucky courts have presumed that when a member or shareholder seeks bring a derivative action against a defendant that controls at least 50% of the company, a demand on the company to bring suit against the defendant would be futile because the defendant could unilaterally reject the demand. See id. at 402-04 ; Sahni , 369 S.W.3d at 46. The plaintiffs contend that the Court should apply that presumption in this case. [Record No. 14, p. 6-7] However, the plaintiffs have not alleged that the defendants control 50% of the Tarter Companies. The only defendant that allegedly has any ownership interest in the Tarter Companies is Joshua Tarter, who owns 16.6%. [Record No. 1, ¶ 17] The plaintiffs own 50%, and the remaining 33.4% is owned by Joshua Tarter's siblings, who are not parties to this action. [Id. ] As a 16.6% owner, Joshua Tarter cannot unilaterally reject a demand for the Tarter Companies to bring suit, and the presumption that such a demand would be futile is not warranted.
Accordingly, to invoke the demand futility exception, the plaintiffs must plead with particularity that Joshua Tarter's siblings could not have properly exercised their independent and disinterested business judgment in responding to a demand on the Tarter Companies to bring this action. McCall , 239 F.3d at 816. The only allegations in the Complaint regarding Joshua Tarter's siblings are that the plaintiffs asked Joshua Tarter to disclose his relationship with QMC and turn over the profits made from QMC in their presence, and that they have not responded to an e-mail the plaintiffs sent to Joshua Tarter making the same requests. [Id. ¶¶ 46, 116-18] The plaintiffs argue that, because Joshua Tarter's siblings "refused to take any remedial action against Tarter or Gregory, or even insist honestly and disclose their fraud, it is plausible these shareholders would not initiate litigation against Tarter and Gregory." [Record No. 14, p. 8-9] But plausibility is not the standard. Instead, the plaintiff must make "particularized factual allegations" sufficient to create "a reasonable doubt" that Joshua Tarter's siblings could not have properly exercised their independent and disinterested business judgment. McCall , 239 F.3d at 816. The fact that Joshua Tarter's siblings did not respond to the plaintiffs' earlier requests-which were not demands to commence litigation-does not create a "reasonable doubt" regarding whether they would have been able to exercise their independent business judgment in responding to a demand to sue.
*743 In their response to the defendants' motion to dismiss, the plaintiffs suggest that Joshua Tarter's siblings are unable to exercise their disinterested business judgment because of their close personal connection with Joshua Tarter. [Record No. 14, p. 10 ("[Joshua Tarter's] siblings, obviously in a difficult personal position, simply refused to engage in addressing or resolving these issues.") ] The plaintiffs also suggest that if Joshua Tarter's siblings were to join this litigation, it could place control of the litigation in "unfriendly hands" because if Joshua Tarter is found liable he may be forced to tender his stock to the Tarter Companies as restitution, and as a result Joshua Tarter and his siblings would no longer control 50% of the Tarter Companies. [Record No. 14, p. 10-11]
As an initial matter, the plaintiffs failed to make these assertions in their Complaint, and may not amend their Complaint by embellishing their factual allegations in their subsequent briefs. Brown v. Accenture Fed. Servs. , 2016 WL 3298543, at *5 (E.D. Ky. June 13, 2016) (citing Car Carriers, Inc. v. Ford Motor Co. , 745 F.2d 1101, 1107 (7th Cir. 1984) ). Further, even the assertions in the plaintiffs' response fail to sufficiently allege that Joshua Tarter's siblings could not have exercised their independent business judgment in responding to a demand to sue. Under Delaware law, a director is considered "interested" if he or she: (i) received a personal financial benefit that was not shared by the other stockholders from the challenged conduct; (ii) might suffer a "materially detrimental impact" from the proposed legal action; or (iii) was incapable, due to domination and control, of objectively evaluating a demand to assert the company's claims. Id. ; see also White v. Lunsford , 2005-CA-1775, 2006 WL 2787469, *5 (Ky. App. Sept. 26, 2006) (quoting Rales , 634 A.2d at 936 ).
The plaintiffs do not allege that Joshua Tarter's siblings received a personal financial benefit from the conduct at issue. In fact, they expressly assert that Joshua Tarter's siblings did not profit from the scheme. [Record No. 14, p. 22 ("[W]hen Tarter devised his scheme to embezzle millions of dollars from the family business, he did not choose his siblings to enjoy the fruits of the fraud, but rather chose Gregory and Chen.") ] Also, the plaintiffs have not indicated that Joshua Tarter's siblings "would have been unwilling to act on behalf of the company because they would have been subject to a 'substantial likelihood' of liability stemming from legal action." White , 2006 WL 2787469, *6. Although it is true that if Joshua Tarter was forced to give up his ownership interest he and his siblings would no longer control 50% of the Tarter Companies, this same thing can be said of any two owners of the Tarter Companies. The plaintiffs have pled no facts indicating that the desire to maintain control of 50% of the Tarter Companies together with Joshua Tarter would undermine Joshua Tarter's siblings' independent judgment. [Record No. 1, ¶ 17]
Finally, although personal relationships may sometimes undermine a director's independence, "the plaintiff must allege specific facts that would demonstrate that the challenged directors were controlled by the offending directors through personal or other relationships." White , 2006 WL 2787469, *6 (citing Aronson v. Lewis , 473 A.2d 805 (Del. 1984). A conclusory allegation that a director cannot be independent due to a personal relationship, without more, is not sufficient. Mayer v. Adams , 167 A.2d 729, 732 (Del. Ch. 1961). The plaintiffs have provided no more than a conclusory allegation that the personal relationship between Joshua Tarter and his siblings would undermine the siblings' independence, especially given *744 that Joshua Tarter's siblings are related to all of the owners of the Tarter Companies, and not just Joshua Tarter. [Record No. 1, ¶ 17]
In short, the plaintiffs have failed to adequately plead that making a demand on the Tarter Companies to bring this action would have been futile. As a result, they have failed to satisfy the statutory prerequisites to bring a derivative action on the Tarter Companies' behalf, and their derivative capacity claims will be dismissed for lack of standing. Fed. R. Civ. P. 23.1(b)(3) ; KRS 271B.7-400 ; KRS 275.337(2).
V.
The plaintiffs lack standing to bring this action in their individual capacities because they have not alleged that they suffered any injury that is separate and distinct from the injury sustained by the Tarter Corporations. Further, they lack standing to bring this action in their derivative capacities because they have failed to adequately plead that they demanded the Tarter Companies to sue on its own behalf or that such a demand would have been futile. As a result, the Court lacks jurisdiction to decide the plaintiff's claims.[9] Accordingly, it is hereby
ORDERED as follows:
1. The defendants' motions to dismiss [Record Nos. 8, 10] are GRANTED .
2. The claims asserted by the plaintiffs against Defendants Joshua Tarter, Donald Tarter and Thomas Gregory are DISMISSED , in their entirety, without prejudice.[10]

The plaintiffs incorrectly assert that "the Complaint need only plausibly allege futility." [Record No 14, p. 9 (citing Bassett v. Nat'l Collegiate Athletic Ass'n , 528 F.3d 426 (6th Cir. 2008) ] "Federal Rule 23.1 of the Federal Rules of Civil Procedure requires that the plaintiff 'allege with particularity' the reasons for failing to make a pre-suit demand."In re Ferro Corp. Derivative Litig. , 511 F.3d 611, 617 (6th Cir. 2008) (quoting McCall v. Scott , 239 F.3d 808, 815 (6th Cir. 2001) (alterations omitted) ). Bassett does not hold otherwise.

The plaintiffs have not stated who has the authority to cause the Tarter Companies to bring suit. However, their assertions that the Tarter Companies are deadlocked due to ownership percentages, and that the plaintiffs own 50% of the Tarter Companies while the other 50% is owned by Joshua Tarter and his two siblings indicate that such a decision is left to the plaintiffs, Joshua Tarter, and Joshua Tarter's two siblings. [Record No. 1, ¶¶ 17, 118] The plaintiffs' response to the defendants' motions to dismiss confirms that this is their position. [Record No. 14, p. 5-11] Accordingly, the relevant decision-makers are the same for the Tarter LLCs and the Tarter Corporations, and the same futility analysis applies to each of the Tarter Companies.

Because the Court finds that it lacks jurisdiction over this matter, it need not address the defendants' alternative arguments to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Edwards v. Walter Jones Constr. , 98-4366, 2000 WL 302710, *1 (6th Cir. 2000).

A final and appealable judgment will be entered upon resolution of claims asserted against Defendant Hong Kong QMC Industry Co. On January 17, 2018, an entry of default was entered by the Clerk of the Court against this defendant [Record No. 25] but a Default Judgment has not been sought or entered as of this date.